# CERTIFICATION OF CIRCUIT CLERK

## STATE OF WEST VIRGINIA, COUNTY OF JEFFERSON

Clerk's Office of the Circuit Court
Of Jefferson County,
At Charles Town, in said State,

I, **LAURA E. STORM,** Clerk of said Court, having by law the custody of the seal, and all papers, books, documents and papers of or pertaining to said court, hereby certify the paper hereto annexed to be a true copy appertaining to said Court, and on file and of record in said office, to-wit:

CIVIL CASE NUMBER:  20-C-144

IN THE MATTER OF:

SCOTT R. ALBRIGHT, AS EXECUTOR OF THE ESTATE OF DEAN THOMAS ALBRIGHT VS. JAKOB TOMAN AND CTWWM, INC.

**COPY OF FILE**

In attestation whereof I have hereunto set my hand and affixed the seal of said Court

December 18, 2020

**LAURA E. STORM**, Clerk

By:_____
      **Deputy Clerk**

EXHIBIT
A

# COVER SHEET

E-FILED | 11/20/2020 3:05 PM
CC-19-2020-C-144
Jefferson County Circuit Clerk
Laura Storm

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF JEFFERSON COUNTY WEST VIRGINIA

**Scott Albright v. Jakob Toman**

**First Plaintiff:** ☐ Business ☑ Individual    **First Defendant:** ☐ Business ☑ Individual
☐ Government ☐ Other    ☐ Government ☐ Other

**Judge:**    David Hammer

## COMPLAINT INFORMATION

**Case Type:** Civil      **Complaint Type:** Other

**Origin:**    ☑ Initial Filing    ☐ Appeal from Municipal Court    ☐ Appeal from Magistrate Court

**Jury Trial Requested:** ☑ Yes ☐ No    **Case will be ready for trial by:** 5/3/2021

**Mediation Requested:** ☐ Yes ☑ No

**Substantial Hardship Requested:** ☐ Yes ☑ No

☐ Do you or any of your clients or witnesses in this case require special accommodations due to a disability?

   ☐ Wheelchair accessible hearing room and other facilities

   ☐ Interpreter or other auxiliary aid for the hearing impaired

   ☐ Reader or other auxiliary aid for the visually impaired

   ☐ Spokesperson or other auxiliary aid for the speech impaired

   ☐ Other:

☐ I am proceeding without an attorney

☑ I have an attorney:    Stephen Skinner, PO Box 487, Charles Town, WV 25414

## SERVED PARTIES

**Name:** Jakob Toman

**Address:**

**Days to Answer:** N/A          **Type of Service:** Hold for Later Service

---

**Name:** CTWWM, Inc.

**Address:**

**Days to Answer:** N/A          **Type of Service:** Hold for Later Service

CC-19-2020-C-144
Jefferson County Circuit Clerk
Laura Storm

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

**SCOTT R. ALBRIGHT, as Executor
of the Estate of DEAN THOMAS ALBRIGHT,**

        **Plaintiff,**

**vs.**                     **CIVIL ACTION NO.  20-C-___**

**JAKOB TOMAN and CTWWM, Inc.,**

        **Defendants.**

## COMPLAINT

Plaintiff Scott R. Albright, as Executor of the Estate of Dean Thomas Albright, by his attorney, Stephen G. Skinner and Skinner Law Firm, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      The Plaintiff is a resident of Berkeley County, West Virginia, and is the Administrator of the Estate of his father, Dean Thomas Albright, who was a resident of Berkeley County, West Virginia, at the time of his death.

2.      Defendant, Jakob Toman, is a resident of Virginia and can be served with a copy of the Complaint and Summons at CTWWM.

3.      The Defendant CTWWM, Inc. ("CTWWM") is a Virginia corporation who at all relevant times was doing business in West Virginia.

4.      At all relevant times, Toman was an employee and agent of CTWWM.

5.      This court has jurisdiction pursuant to W. Va. Code W. Va. Code § 51-2-2 because the amount in controversy is in excess of $7,500 and because most if not all of the acts that the form the basis for the claims occurred in West Virginia.

1

6.      Venue is proper in Jefferson County pursuant to W. Va. Code §56-1-1 because the cause of action arose in Jefferson County.

## FACTS

7.      On January 25, 2019, Defendant Toman was driving a truck owned by Defendant CTWWM, Inc. traveling eastbound on Route 9 on his way to make a delivery for CTWWM.

8.      Toman was in the right lane, and a witness observed him driving erratically.

9.      Without warning, Toman swerved from his lane of travel and crossed into the left lane.

10.     Dean Albright was driving in the left lane and Toman nearly crashed into Albright.

11.     Toman's sudden movement into the lane caused Dean Albright to attempt to avoid the truck. That caused him to lose control of his car sending him into the median and over the edge of a 30 foot high overpass where his injuries eventually led to his death.



2

12.     No action of Dean Albright contributed to cause the wreck.

13.     No omission of Dean Albright contributed to cause the wreck.

14.     Toman's lack of attention to his driving left him unaware that he had forced Dean Albright's car off the road and over the side of an overpass bridge.

15.     Even though Toman's erratic driving caused Dean Albright to crash, Toman did not stop driving.

16.     Instead, Toman continued to drive to his destination, the Potomac Crossing shopping center.

17.     Another driver who witnessed what happened followed Toman and made a note of the truck's license plate.

18.     Meanwhile, emergency personnel responding to the scene of the collision had to extract Dean Albright from his car.

19.     Dean Albright sustained severe injuries in the catastrophic crash and was transported by ambulance to the emergency department of Berkeley Medical Center.

20.     Because of the severity of his injuries, Dean Albright was then flown by helicopter to Fairfax Inova Hospital in Virginia.

21.     Dean Albright died of his injuries in Fairfax Inova Hospital.

22.     Defendant Toman failed to exercise reasonable care, failed to maintain control of the vehicle, and was otherwise negligent, grossly negligent, careless, wanton, and reckless in his conduct.

23.     His conduct after the wreck is evidence of his state of mind and his lack of attention to his surroundings.

3

24.     Properly maintained delivery trucks are able to maintain their lane.

25.     Properly trained commercial drivers are able to stay in their lane of travel.

26.     Properly trained commercial drivers stop their vehicles when they have caused a wreck or accident.

27.     Defendant CTWWM negligently failed to ensure that Toman was properly trained prior to hiring him.

28.     Defendant CTWWM failed to train Toman in how to make non-negligent deliveries and make judgments about driving in conditions that could cause his truck to lose control.

29.     The wreck was solely caused by the negligence of the Defendants, individually and collectively, and the careless driving of Toman.

30.     As a further result of the tortious and reckless acts of the Defendant, the Estate of Dean Albright and his beneficiaries incurred damages including: sorrow, mental anguish, and solace; the services, protection, care and assistance provided by Dean Albright to his beneficiaries; expenses for the care, treatment and hospitalization of the decedent; and reasonable funeral expenses.

## COUNT 1
## NEGLIGENCE OF TOMAN

31.     All preceding statements of the complaint are incorporated herein and realleged as if expressly set forth herein.  Upon information and belief:

32.     At the time of the wreck, Defendant Toman failed to exercise due care by driving the truck carelessly and erratically, having faulty brakes and/or tires, driving in a

4

reckless manner, improperly following too close, disregarding the actual and potential hazards then existing, and failing to perform a proper inspection of the truck when he knew, or should have known, of problems with the brakes and tires.

33.     The truck driven by Defendant Toman was driven with the permission and at the direction of Defendant CTWWM.

34.     The CTWWM tractor driven by Defendant Toman was driven in the course and scope of his employment with the business of Defendant CTWWM.

35.     The CTWWM trailer hauled by Defendant Toman was operated in the course and scope of his employment with the business of Defendant CTWWM.

36.     At the time and place of this wreck, Defendant Toman owed a duty of care to Mr. Albright and the public on the roadways to operate his truck in a non-negligent manner.

37.     Toman was negligent under the circumstances then and there existing in that he:

        a.  failed to keep his vehicle under control;

        b.  failed to keep a proper look-out;

        c.  failed to timely apply his brakes, alter direction of travel, or take any other appropriate action when he, by the exercise of due and reasonable care, should have seen and or been aware of the vehicles in the lane beside him;

        d.  failed to operate his vehicle in a safe and prudent manner in view of the conditions which existed that day and at the time of the wreck;

    e.  failed to inspect his vehicle in a manner considerate of the safety and lives of the other persons lawfully on the road;

    f.  failed to operate his vehicle in a manner considerate of the safety and lives of the other persons lawfully on the road;

    g.  drove in a reckless manner;

    h.  failing to stop and render aid; and

    i.  such other actions or inactions that may be shown at trial and through expert testimony.

38.    It was foreseeable that Toman's negligence including his failure to maintain control of his truck and stay in his lane could lead to another vehicle running off the road.

39.    Toman's negligence proximately caused Dean Albright's wreck and resulting damages and injuries.

40.    At the time and place of this accident, the Defendant Toman was negligent in that he was violating one or more of the statutes of the State of West Virginia including but not limited to:

    a.  W. Va. Code § 17C-2-2. Required obedience to traffic laws;

    b.  W. Va. Code § 17C-5-3. Reckless driving;

    c.  W. Va. Code § 17C-7-9. Driving on roadways laned for traffic; and

    d.  W. Va. Code § 17C-8-8. Turning movements and required signals.

## COUNT TWO
## NEGLIGENCE OF TOMAN IN FAILING TO STOP AND RENDER AID

41.     All preceding statements of the complaint are incorporated herein and realleged as if expressly set forth herein.

42.     Toman owed a duty to Dean Albright and the traveling public to immediately stop and render aid to Dean Albright.

43.     The failure to stop and render aid was a proximate cause of Dean Albright's injuries and ultimate death.

44.     At the time and place of this wreck, the Defendant Toman was negligent in that he was violating one or more of the statutes of the State of West Virginia including but not limited to:

45.     W. Va. Code §1C-4-3. Duty to give information and render aid and §17C-4-1. Crashes involving death or personal injuries

46.     Defendants' negligence, individually and collectively, proximately caused the injuries and death to Dean Albright and the damages alleged above.

## COUNT 3 – NEGLIGENCE OF CTWWM
## NEGLIGENT HIRING, TRAINING, ENTRUSTMENT,
## SUPERVISION, RETENTION AND MAINTENANCE

47.     All preceding statements of the complaint are incorporated herein and realleged as if expressly set forth herein.  Upon information and belief:

48.     Defendant CTWWM owns the truck operated by Toman.

49.     At the time of the wreck, Defendant Scott Toman was an employee and/or agent of defendant CTWWM.

7

50.     At all times relevant hereto, Scott Toman was a truck driver for CTWWM and was acting within the scope and course of its business.

51.     At all times relevant hereto, Defendant CTWWM was acting by and through its employees/agents and was responsible for the acts of those employees and agents pursuant to *respondeat superior*, agency, apparent agency, negligent entrustment, negligent hiring of an independent contractor, or similar theory of law.

52.     At all times relevant hereto, Defendants CTWWM and Toman were acting in a joint enterprise:

        a.     They agreed to move goods for profit;

        b.     They coordinated and combined resources and skills in order to achieve their objective of moving items in order to earn money.

53.     Regardless of the employment relationship, Defendant CTWWM is the registered owner of the truck involved in this wreck and is therefore responsible for the acts of the driver of that vehicle.

54.     At all times relevant to this cause of action, Defendants CTWWM and Toman were subject to and required to obey the minimum safety standards established by the Federal and State law.

55.     The operation of a commercial delivery company and the hiring, qualifying, training, and supervising of its drivers requires care and skill to be done safely or it is foreseeable that serious harm and injury will occur to the traveling public.

56.     CTWWM's acts, and failures to act, as described below and above resulted in foreseeable harm to Dean Albright.

57.     Defendant CTWWM is required to qualify and hire safe truck drivers and to teach and train those drivers so that they are able to understand and obey the rules and regulations required of commercial drivers and to carry out their duties and obligations.

58.     Defendant CTWWM breached these duties and was negligent, and grossly negligent, in:

      a.    hiring and/or contracting with Defendant Toman to drive the truck at issue;

      b.    training of Defendant Toman on the rules and regulations required to safely operate the vehicle;

      c.    failing to supervise Defendant Toman while driving the truck;

      d.    failing to train Defendant Toman to properly drive the truck;

      e.    failing to train Defendant Toman to properly inspect the truck;

      f.    failing to train Defendant Toman to properly maintain the truck;

      g.    entrusting Defendant Toman with the truck;

      h.    retaining Defendant Toman to drive the truck;

      i.    failing to conduct proper and required checks on the background of their employee, agent Defendant Toman; and

      j.    failure to exercise ordinary care to determine their employees' agents' and/or contractors' fitness for the task of driving a vehicle interstate.

59.     Defendant CTWWM had a duty to promulgate and enforce rules and regulations to ensure its drivers and vehicles were reasonably safe, and negligently failed to do so.

60.      Defendant CTWWM, through its agents and employees, knew, had reason to know, or should have known by exercising reasonable care, about the risks set forth in this complaint and that by simply exercising reasonable care these risks would be reduced or eliminated. These risks include, but are not limited to:

   a.   the risks associated with unsafe drivers;

   b.   the risks associated with failing to train drivers to obey the rules and regulations required to safely operate trucks;

   c.   the risks associated with failing to train drivers to follow minimum driving standards for commercial drivers;

   d.   the risks associated with failing to train drivers to follow minimum inspection standards for commercial drivers;

   e.   the risks associated with failing to train drivers to follow minimum maintenance standards for commercial drivers;

   f.   the risks associated with failing to have adequate risk management policies and procedures in place;

   g.   failing to have policies and procedures in place to identify undertrained and unqualified drivers;

   h.   failure to appropriately implement and enforce risk management policies and procedures to monitor and assess Defendant Toman once he was hired;

   i.   failing to implement and follow a written safety plan;

10

      j.   failing to protect the members of the public, such as the Plaintiff, from the risks described above;

      k.   failing to use the composite knowledge reasonably available to CTWWM to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk; and

      l.   failing to appropriately implement and enforce risk management policies and procedures to identify the risks described above.

61.    CTWWM  was negligent in the maintenance of the truck and in the hiring, qualifying, supervising, training, and retention of Defendant Toman and is responsible for negligent entrustment of their truck to his care, and these acts of negligence, individually and combined and concurring with the acts of negligence of the other Defendants, proximately resulted in the damages to the Plaintiffs.

62.    The negligence of Defendant CTWWM was a proximate cause of the injuries and subsequent death of Dean Albright and the damages alleged above.

WHEREFORE, Plaintiff, Scott R. Albright, as Administrator of the Estate of Dean Thomas Albright, demands judgment against Defendant Jakob Toman and CTWWM, in past and future compensatory and punitive damages according to proof, plus costs, pre-judgment and post-judgment interest.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

11

SCOTT R. ALBRIGHT, as
Executor of the Estate of
**DEAN THOMAS ALBRIGHT**
BY COUNSEL

/s/ Stephen G. Skinner
Stephen G. Skinner (W.Va. Bar No. 6725)
SKINNER LAW FIRM
115 E. Washington St.
Charles Town, WV 25414
304-725-7029
sskinner@skinnerfirm.com

12

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

**SCOTT R. ALBRIGHT, as Executor**
**of the Estate of DEAN THOMAS ALBRIGHT,**

          **Plaintiff,**

**vs.**                                **CIVIL ACTION NO.  20-C-___**

**JAKOB TOMAN and CTWWM, Inc.,**

          **Defendants.**

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CTWWM, INC.

The undersigned hereby serves upon you the following written Requests for Production under the provisions of *Rules 26 and 34* of the *West Virginia Rules of Civil Procedure*.  Complete responses are required within 45 days.

**These discovery requests shall be continuing in nature** until the day of trial, and you are required to serve supplemental responses as additional information may be found or is made available to you as required by *Rules 26* of the *Rules of Civil Procedure*.

## I.     DEFINITIONS

**PLEASE NOTE:**  The following definitions govern, and <u>must</u> be consulted in order to respond properly to the following Requests for Production.

    A.     **"Complaint"** refers to the complaint in this captioned action.

    B.     "**You**" shall be defined to refer to the Defendant to whom this set of discovery materials is addressed.  Wherever a question refers to the contentions, knowledge, or awareness of

"you", "you" is defined to include Defendant <u>and</u> its agents, employees, representatives and attorneys.

C.    "**The subject vehicle**" shall be defined to refer to the vehicle operated by Mr. Albright described in the Complaint.

D.    "**Occupant**" shall be defined as any persons in the Defendant's truck at the time of the collision referenced in the Plaintiff's Complaint.

E.    "**The collision**" shall refer to the vehicular collision which is the subject of this lawsuit.

F.    "**Document**" is used in its customary broad sense to mean, by way of illustration, and not by way of limitation.

1.    All written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in the actual or constructive possession, custody or control of Defendant, or Defendant's attorneys, including but not limited to all writings, letters, minutes, bulletins, correspondence, telegrams, memoranda, notes, instructions, literature, work assignments, notebooks, records, agreements, contracts, notations of telephone or personal conversations or conferences, intra and out of office communications, microfilm, circulars, pamphlets, advertisements, catalogues, studies, notices, summaries, reports, books, invoices, graphs, photographs, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work sheets, statistics, speeches and other writings, tape-recordings, transcripts of tape-recordings, phonograph records, data compilations from which information may be obtained or can be translated through detection into reasonably usable form, or any other tangible thing;

2.      Originals and all other copies not absolutely identical; and

3.      All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not.

4.      The pronouns "he," "him" or "his" include "she," "her," "hers," and "they" or "theirs" when appropriate.

G.      "**Describe with particularity**" means to give a full and complete narrative account of the information requested without omission of all relevant facts, whether deemed material by the Defendant or not, and without omission of information which could lead to the discovery of admissible evidence, all within the spirit of the discovery rules.

H.      "**Identify**", when used in reference to an individual **person**, shall be read and defined to call for a full and complete description of the **identity** and **location** of the person, to include all such information reasonably available to this answering Defendant regarding the person's full name, including any other names by which such person has been known, and his or her present or last known address and phone number.

I.      "**Identify**" when used in reference to a business, governmental or other legal **entity** shall be read and defined to call for a full and complete description of the **identity** and **location** of the entity, to include all such information reasonably available to this answering Defendant regarding the entity's name and the address and phone number of its principal offices with which you have had contact.

J.      "**Identify**" when used in reference to a **document** (as herein below described), shall be read and defined to call for a full and complete description of the **identity, discoverability** and **location(s)** of the document, to include all such information reasonably available to this Defendant regarding the date and general nature of the document, the general subject matter(s) of the

document's contents, the name and address of the author(s) and recipients, and, if you contend the document to be privileged or otherwise excluded from discovery, your basis for same.

K.       **"Identify"** when used in reference to an **unrecorded communication** (as defined herein) shall be read to call for a complete description of the **nature** and **participants** of the communication, to include all such information reasonably available to this answering Defendant regarding the date and place it was made, the name and address of each and every person who participated in or was witness to the communication; the manner of such conversation or oral communication (i.e.--whether by telephone, face-to-face, etc.); and the verbatim content or a detailed description of the communication.

L.       **"Unrecorded Communication"** shall mean any method by which ideas or expressions, whether articulated or nonverbal, are transmitted between persons or entities and shall include by way of illustration, and not by way of limitation, oral statements, conversations, conferences, signs, gestures, and other, non-verbal transmissions of ideas.

M.       **"Identify"**, when used referring to a **diagram, drawing plat or other illustration**, shall be read and defined to call for a complete description of the identity and present whereabouts of the item in question, to include all such information reasonably available to this answering Defendant regarding the general nature of the item; the subject matter(s); the identity, by name and address, of the present custodians; the date(s) the item was created; and the identities, by name and address, of the creators and collaborators.

N.       **"Identify"**, when used referring to an **experiment, test, measurement, inspection or other observation**, shall be read and defined to call for a complete description of the identity and present whereabouts of the item in question, to include all such information reasonably available to this answering Defendant regarding the general nature of the item; the subject

matter(s); the identity, by name and address, of the present custodians; the date(s) the item was conducted; and the identities, by name and address, of the participants and witnesses.

O.     "**Identify**" when used in reference to a **photograph, film, videotape, audiotape or some other recording**, shall be read and defined to call for a <u>complete description of the identity and whereabouts</u> of the item, to include all such information reasonably available to this answering Defendant regarding the date and general nature; the general subject matter(s); and, the identity, by name and address, of the producer(s) and present custodians.

P.     "**Identify**", when used in reference to a **standard, statute or regulation**, or to sets thereof, shall be defined to call for a <u>complete description of the identity and whereabouts</u> of each item, to include all such information reasonably available to this answering Defendant regarding the title(s): the date of promulgation or issuance; the issuing or publishing body or entity; a present address for obtaining a copy; and the time period in which the item was in effect.

Q.     "**Identify**", when used in reference to an **expert witness**, shall be defined to call for a <u>complete identification and disclosure of opinions and factual basis pursuant to Rule 26(a)(2)(B)</u> by indicating, the witness's full name and business address; the witness's areas of expertise or specialty; the subject matter upon which the witness is expected to testify as an expert; the substance of the facts and opinions to which the expert is expected to testify; and, the grounds for each opinion.

R.     "**Traffic violation**" shall mean any violation of the traffic laws of any state in the United States of America or any violation of the Federal Motor Carrier Safety Regulations.

**II.     PRIVILEGE**

If any document referred to or identified in response to any Interrogatory would be identified, described, or produced except for the fact that a privilege against such identification,

description, or production is claimed, then please prepare a Privilege Log and set forth for each such document:

    a.    Its date, title, type of document, and its length;

    b.    Its writer, preparer, sender, addressee and every person receiving copies;

    c.    A general description of its subject matter;

    d.    The exact grounds on which the objection to production is based;

    e.    The identity of all persons, in addition to those identified as required by section (b), supra, known to you who have seen the document; and

    f.    The identity of the person now in possession of the document.

## III.    DOCUMENTS NO LONGER IN EXISTENCE OR NO LONGER UNDER POSSESSION, CUSTODY OR CONTROL

If any document referred to or identified in response to in any Request for Production was at one time in existence and under Defendant's or Defendant's attorneys' possession, custody or control, but has been lost, discarded or destroyed, or has been removed from Defendant's or Defendant's attorneys' possession, custody or control, then with respect to each such document:

    a.    Identify and describe such document by date, title, and type of document;

    b.    State when each such document was most recently in the possession or subject to the control of Defendants, or Defendant's attorneys, and what disposition was made of such document, including an identification of the person, if any, presently in possession or control of such document;

    c.    State when such document was transferred or destroyed, identify the person who transferred or destroyed such document and the persons who authorized or directed that the document be transferred or destroyed or having knowledge of its transfer or destruction and state the reason such document was transferred or destroyed; and

d.    Identify all persons having knowledge of the contents thereof.

## REQUESTS FOR PRODUCTION

1.    All written and/or recorded statements taken from anyone regarding the collision, damages or any other issue in this case.

2.    All investigative reports, including reports by any person or entity hired by the Defendant to make an investigation relating to the occurrence.

3.    All diagrams, drawings, photographs, slides, videos and movies of the scene of the occurrence, the vehicles involved, any physical evidence at the scene such as tire impressions, gouge marks, scuff marks, debris and/or any other evidence which you contend resulted from the collision at issue, any of the parties to this lawsuit, and any other matter that could be relevant to the lawsuit.

4.    All documents, exhibits or other tangible evidence not previously produced which the Defendant intends to introduce into evidence or to use at trial.

5.    All documents, exhibits or other tangible evidence referred to or utilized by Defendant in answering plaintiff's interrogatories which has not otherwise been requested in these Requests to Produce.

6.    All Driver's U.S.D.O.T. Qualification Files, personnel files, employment applications, disciplinary records or records of any kind maintained on or mentioning any occupant as contemplated by 49 C.F.R. 391.11.

7.    Personnel files for any occupant in the Defendant's vehicle at the time of the collision containing documents other than those required by the USDOT.

8.    A list of all documents and tangible things ever removed from any occupant's "driver qualification file".

9.    All documents in your possession, custody or control pertaining to any "disqualification" of any occupant as contemplated by 49 C.F.R. § 391.15.

10.    All documents related to any suspension, revocation and/or termination of any driver's license, commercial or otherwise, in the last ten (10) years for any occupant.

11.    All documents related to driver and management training.

12.    All training materials, manuals, operating procedures, slides, videotapes, memoranda and/or other documents reflecting company policy with regard to the safe driving of trucks which was in place for 5 years prior to the collision in this case.

13.    Copies of all documents provided by the Defendant to any occupant regarding the dangers of fatigued driving.

14.    Copies of all documents provided by the Defendant to any occupant regarding the dangers of distracted driving.

15.    Copies of all documents concerning the safe operation of a truck provided by the Defendant to any occupant.

16.    Copies of all agendas, schedules, minutes, and/or notes from all safety meetings for the one year prior to the collision at issue in this case.

17.    Copies of all documents that evidence the names of truck drivers and their supervisors were in attendance at the safety meetings for the one year prior to the collision at issue in this case.

18.    Any and all safety meeting minutes, recordings, and reports concerning the collision which is the subject of this lawsuit.

19.    All reports to public agencies, governmental agencies, and/or other public records related to the collision which is the subject of this lawsuit.

20.     All lawsuits, pleadings, depositions, answers to discovery, and verdict sheets with respect to other wrecks and/or collisions involving vehicles or trucks owned or operated by you, including your employees, agents, or representatives from the previous 10 years to the present date.

21.     All documents regarding all settlements in other claims and/or cases against you which arose as the result of a wreck and/or collision involving a vehicle or truck owned or operated by you, including your agents, employees or representatives during the five (5) years prior to the wreck in this case.

22.     All information supplied by the manufacturer or seller of the subject truck which pertains to the safe operation of the same or similar truck, including videotapes, manuals, pamphlets, brochures, photographs, or other documentation.

23.     All precautions and/or warnings supplied by the manufacturer or seller of the subject truck which pertains to the safe operation of the same or similar truck.

24.     All materials supplied by a voluntary trade association of which you are a member with respect to safety in the handling or operation of vehicles for delivery for the 5 years prior to the collision in this case.

25.     Any and all documents relating to any drivers employed by you within the last three (3) years, other than the driver of the Defendant's vehicle on at the time of the collision, which indicate that any of your drivers have violated the any state or federal law while driving.

26.     All documents in your possession, custody or control evidencing any notification ever made to you by any occupant pursuant to 49 C.F.R. § 383.31.

27.     All documents in your possession, custody or control evidencing any notification ever made to you by any occupant pursuant to 49 C.F.R. § 383.33.

28.     All documents in your possession, custody or control evidencing any notification ever made to you by any occupant pursuant to 49 C.F.R. § 383.35.

29.     All documents in your possession, custody or control evidencing efforts by any occupant to obtain a commercial driver's license, including, but not limited to, the documentation required by 49 C.F.R., Part 383 Subpart E.

30.     All documents in your possession, custody or control evidencing any efforts by you to test and/or assess any occupant's knowledge of "safe operations regulations" pursuant to 49 C.F.R. § 383.111 (a).

31.     All documents in your possession, custody or control evidencing any efforts by you to test and/or assess any occupant's knowledge of "safe vehicle control" pursuant to 49 C.F.R. § 383.111 (c).

32.     All documents in your possession, custody or control evidencing any efforts by you to test and/or assess any occupant's knowledge of "basic vehicle control skills" pursuant to 49 C.F.R. § 383.113(a).

33.     All documents in your possession, custody or control evidencing any efforts by you to test and/or assess any occupant's knowledge of "safe driving skills" pursuant to 49 C.F.R. § 383.113(b).

34.     All "driver information manuals" you provided and/or made available to any occupant. For purposes of this request, "driver information manuals" is defined consistently with 49 C.F.R. § 383.131.

35.     All documents and tangible things in your possession, custody or control pertaining to any testing you did with respect to any occupant pursuant to 49 C.F.R. Part 383, Subpart G.

36.    All documents in your possession, custody or control pertaining to any occupant's commercial or non-commercial driver's license.

37.    All documents in your possession, custody or control pertaining to your safety fitness rating for the 5 years prior to the collision in this case.

38.    All documents in your possession, custody or control pertaining to any "compliance reviews" (as defined by 49 C.F.R. § 385.3) performed in the past five (5) years.

39.    All documents in your possession, custody or control pertaining to any "safety reviews" (as defined by 49 C.F.R. § 385.3) performed in the past five (5) years.

40.    All documents in your possession, custody or control pertaining to any safety management controls" (as defined by 49 C.F.R. § 385.3) you had in place on the date of the collision as described in the Complaint.

41.    All documents in your possession, custody or control evidencing or pertaining to any requests by you in the last five (5) years, pursuant to 49 C.F.R 385.15 and/or § 385.17, for a change in your safety rating.

42.    All Motor Carrier Identification Reports you have filed in the past five (5) years.

43.    All documents in your possession, custody or control pertaining to any occupant that you maintain pursuant to the requirements of 49 C.F.R. § 390.31

44.    All documents and tangible things in your possession, custody and control pertaining to any "investigation and inquiries" made by and/or on behalf of you pursuant to 49 C.F.R. § 391.23 regarding any occupant.

45.    All documents and tangible things that evidence and/or discuss your policies and procedures regarding the performance of "investigation and inquiries" pursuant to 49 C.F.R. § 391.23.

46.     All documents and tangible things in your possession, custody or control pertaining to annual reviews you performed of any occupant's driving record pursuant to 49 C.F.R. § 391.25.

47.     All documents and tangible things pertaining to any "lists" ever provided to you by any occupant pursuant to 49 C.F.R. § 391.27.

48.     All documents and tangible things pertaining to any "road tests" of any occupant ever performed by you or on your behalf pursuant to 49 C.F.R. § 391.31

49.     All documents and tangible things pertaining to any tests of any occupant ever performed by you or on your behalf pursuant to 49 C.F.R. § 391.33.

50.     All Driver's Examination Reports (Medical Certification long forms) for the last 5 years for every occupant.

51.     All documents and tangible things pertaining to any alcohol and/or controlled substance testing of any occupant pursuant to 49 C.F.R, Part 382, including, but not limited to the following:

a.      On-duty testing pursuant to § 382.205;

b.      Pre-duty testing pursuant to § 382.207;

c.      Post-collision testing pursuant to § 382.209;

d.      Controlled substances testing pursuant to § 382.213 and § 382.215;

e.      Pre-employment testing pursuant to § 382.301;

f.      Post-collision testing pursuant to § 382.303;

g.      Random testing pursuant to § 382.305;

h.      Reasonable suspicion testing pursuant to § 382.309;

i.      Return-to-duty testing pursuant to § 382.309; and

j.      Follow-up testing pursuant to § 382.311.

52.     All documents and tangible things pertaining to any refusals by any occupants to ever submit to an alcohol and/or controlled substances test.

53.     All Driver's Drug and Alcohol test results for any occupant since employment (§ 382.401).

54.     All documents evidencing or discussing your policies and/or procedures for the retention of records pertaining to alcohol and/or controlled substance testing.

55.     All documents in your possession, custody or control pertaining to any removal of any occupant pursuant to 49 C.F.R. § 382.501.

56.     All documents in your possession, custody or control pertaining to any evaluation and testing of any occupant pursuant to 49 C.F.R. § 382.503.

57.     All documents in your possession, custody or control evidencing and/or describing any "alcohol-related conduct" involving any occupant pursuant to 49 C.F.R. § 382.505.

58.     All documents in your possession, custody or control evidencing any "penalties" assessed to or involving any occupant pursuant to 49 C.F.R. § 382.507.

59.     All documents that evidence, discuss or pertain to policies promulgated by you as required by 49 C.F.R. § 382.601 regarding the misuse of alcohol and use of controlled substances.

60.     All documents in your possession, custody or control evidencing or pertaining to any "controlled substances testing" of any occupant pursuant to 49 C.F.R. Part 391, Subpart H.

61.     All documents that evidence, discuss or pertain to policies promulgated by you regarding 49 C.F.R. Part 392, Subpart A, including, but not limited to the following:

a.      Ill or fatigued drivers, as contemplated by 49 C.F.R. § 391.3;

b.      Drugs or other substances, as contemplated by 49 C.F.R. § 391.4;

c.      Alcohol prohibition, as contemplated by 49 C.F.R. § 392.5; and

d.      Schedules to conform with speed limit, as contemplated by 49 C.F.R. § 392.6.

62.     All documents that evidence, discuss or pertain to policies promulgated by you regarding 49 C.F.R. Part 395, including, but not limited to the following:

a.      Maximum driving time, as contemplated by 49 C.F.R. § 395.3;

b.      Driver's record of duty status, as contemplated by 49 C.F.R. § 395.8; and

c.      Driver's declared out of service status, as contemplated by 49 C.F.R. § 395.13.

63.     All ownership and registration documents and/or records for the Defendant's truck and trailer involved in the collision.

64.     All maintenance, service and repair records for the Defendant's truck and trailer involved in the collision since truck was placed in service.

65.     All trip reports for any occupant for the one (1) year immediately prior to the collision.

66.     All road test certificates for any occupant for the one (1) year immediately prior to the collision.

67.     All written test certificates for any occupant for the five (5) years immediately prior to the collision.

68.     All documents that refer, discuss and/or pertain to log book violations by any occupant.

69.     All documents that evidence or discuss your policies and procedures regarding log book entries.

70.     All of the Driver's Daily Log Books for the six (6) months before the subject collision for any occupant including the log book entries on the date of the collision.

71.     If the driver is exempt from maintaining the daily log sheet, supply the company's record of time worked each day for the previous MONTH (§ 395.1(e)).

72.     All bills of lading, load manifests and any other company or shipper documentation related to load activity by any occupant in the thirty (30) days preceding the collision.

73.     All documents reflecting or pertaining to road expenses incurred by any occupant in the thirty (30) days preceding the collision.

74.     All documents reflecting or pertaining to annual reviews by you of any occupant's driving record.

75.     All documents you received from any state or federal agencies regarding any occupant for the two (2) years immediately preceding the wreck.

76.     All check point and/or weigh station records for any occupant the seven (7) days prior to the collision up to and including the day of the collision.

77.     All fuel receipts depicting fuel charges incurred by any occupant for the seven (7) days prior to the collision.

78.     Driver's Truck Mileage and Fuel Purchase records (sometimes referred to as a Driver's Trip Record or Individual Mileage Record) for the previous MONTH [International Fuel Tax Agreement (IFTA) requires all carriers from every state to maintain these for a period of at least 4.5 years].

79.     Supporting receipts for the records described in number 78 above, such as but not limited to: fuel purchase receipts, computer summary reports of fuel purchases for specific vehicle, credit card account statements for this driver and vehicle (e.g. EFS, Comdata), repair receipts, weight scale receipts and toll receipts.

80.     Documents developed in the course of business that are used to verify the accuracy of the occupant's log records, such as fuel purchase receipts, credit card printouts showing dates and times, position history reports, vehicle on-board computer printouts, motel receipts, repair receipts, toll receipts, scale receipts, roadside inspections, bills of lading and shipping documents, etc such as may be required by federal and state tax agencies for the purpose of expense deduction verification.

81.     Records described in Appendix A to Part 379 (§ 379.13), that relate to the subject occupant and equipment, namely; insurance claims information, accident reports, freight bills and settlements, bills of lading, dispatch registers and other records, financial records – each for a period of 1 year prior to this crash.

82.     All toll tickets incurred by any occupant for the seven (7) days prior to the collision.

83.     All fuel tax records depicting taxes for fuel charges incurred by any occupant for the seven (7) days prior to the collision.

84.     All dispatch documents, records, logs and notes pertaining to any occupant from the date he picked up the load he or she was carrying through and including the date of the collision as described in the Complaint.

85.     Dispatch records for occupant and vehicle for the MONTH prior to the collision in this case.

86.     Company reports, which evaluate productivity of occupant, truck and contractor over the previous MONTH.

87.     Security guard gate records for the MONTH prior to the collision in this case.

88.     Occupant call-in records to dispatch showing date, time and location for the MONTH prior to the collision in this case.

89.     All cell telephone and pager records for any occupant for one (1) month prior to the collision at issue in this case, including records regarding calls made, text messages sent and received, and any other type of communication by any occupant. The data on any occupant's phone should not be altered and/or erased and should be preserved as it may be evidence in this case.

90.     For the month prior to the collision in this case, please provide Global Position Satellite (GPS) position history reports, dispatch records or communication reports that are or were contained in the motor carrier's computing system or backup devices, or have been printed, either for the previous month's activity.  Some popular GPS providers are; Qualcomm, Peoplenet, Nextel, Verizon, Highway Master and TransCore.

91.     All documents and tangible things pertaining to any computer and/or satellite tracking of the truck and/or trailer involved in the collision for the month prior to the collision in this case.

92.     Printouts of data for subject vehicle for previous MONTH of on-board computers that monitor vehicle speed, vehicle operation time, engine speed, shifting patterns, etc. (XATA, DDEC, Argos, Cummins, etc.).

93.     Correspondence between the Defendant and occupant since the date of hire.

94.     All internal communications, including, but not limited to e-mail communication, you have regarding the collision in this case. This request does not seek your communications with your attorneys.

95.     All internal communications, including, but not limited to e-mail communication, you have regarding any occupant's statements regarding the wreck. This request does not seek your communications with your attorneys.

96.     If any occupant was terminated after the collision in this case, please produce all documents in your possession, custody and/or control regarding the reason(s) that you terminated any occupant following the collision at issue in this case, including but not limited to all internal written and electronic communication (emails), all correspondence, and all reports.

97.     All documents provided to you including but not limited to documents regarding the efficient operation of a motor carrier company, the safe operation of commercial motor vehicles, risk management, documentation, hours of service, compliance with the Federal Motor Carrier Safety Regulations, loss reduction, increased profits, insurance benefits, occupant's medical and/or health issues, fatigued driving, collisions, crash avoidance techniques, avoidable collisions, the competency of any one or more of your drivers, any training and/or any other matter.

98.     Company's Record of all D.O.T. Recordable Accidents containing at least the information required to be listed by 49CFR § 390.15(b) and additional accidents and information that may be noted on your historical record, all for the year prior to the collision in this case.

99.     Occupant's citations, complaints, commendations or disciplinary actions taken by the company or a government agency.

100.    Vehicle and driver's road side inspections, citations and Defendant responses.

101.    D.O.T. (U.S. and State) Safety and/or Compliance Review Reports prepared and provided to the carrier as well as supporting documentation utilized in the investigation review.

102.    Occupant's payroll records for the previous MONTH.

103.    Complete list of equipment (trucks and trailers) owned and operated at the time of the accident that shows at least the unit number, year, make, serial number, number of axles, license number, gross weight, purchase date and sizes (width and length).

104.    Copy of the carrier's previous year's state Apportioned License Tag (IRP) renewal application including Schedules A/E, C and B.

105.    Copy of the carrier's previous two (2) years of their single state registration applications and receipts which would include forms SSRS-1, SSRS-2 AND SSRS-3.

106.    Company Safety Policy and Procedures Manual.

107.    Driver Safety Policy and Procedures Manual.

108.    Company Policy regarding Hours of Service.

109.    Company Safety Training Manual and description of training aids (videos, handouts, etc.).

110.    Employer's Authorization to Driver for logging off-duty.

111.    Copy of each state's motor carrier certificate or permit authorizing for-hire intrastate transportation.

112.    Copy of the Interstate Commerce Commission (ICC), Federal Highway Administration (FHWA), Federal Motor Carrier Safety Administration (FMCSR) or any other federal government motor carrier certificate or permit authorizing for-hire interstate transportation, as well as a copy of the OP-1 application form.

113.    Copy of the most recent USDOT MCS-150 form that was submitted by the carrier prior to this crash.

114.    For any document being withheld from production based on the claim of privilege, provide a log containing the following information with respect to each and every document for which said claim of privilege is being made:

      a.   the date on which such document was prepared or finalized

      b.   the name and last known address of the author of the documents;

c.  the name and last known address of the recipient of the documents;

d.  a brief description of the subject matter covered in the document; and

e.  the exact basis of the claim of privilege.

**SCOTT R. ALBRIGHT, as**
**Executor of the Estate of**
**DEAN THOMAS ALBRIGHT**
**BY COUNSEL**

/s/ Stephen G. Skinner
Stephen G. Skinner (W.Va. Bar No. 6725)
SKINNER LAW FIRM
115 E. Washington St.
Charles Town, WV 25414
304-725-7029
sskinner@skinnerfirm.com

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

SCOTT R. ALBRIGHT, as Executor
of the Estate of DEAN THOMAS ALBRIGHT,

        Plaintiff,

vs.                           CIVIL ACTION NO.  20-C-___

JAKOB TOMAN and CTWWM, Inc.,

        Defendants.

## CERTIFICATE OF SERVICE

I, Stephen G. Skinner, counsel for Plaintiff, do hereby certify that the foregoing

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF**

**DOCUMENTS TO DEFENDANT CTWWM, INC.,** has been served upon the

Defendant with service of the Complaint.

                        /s/ Stephen G. Skinner
                        Stephen G. Skinner

 West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: David Hammer

**To:** Stephen Skinner
sskinner@skinnerfirm.com

# NOTICE OF FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

The following complaint was FILED on 11/20/2020 3:05:30 PM

Notice Date:    11/20/2020 3:05:30 PM

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org

 West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:** Stephen G. Skinner
sskinner@skinnerfirm.com

# NOTICE OF FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

This notice of judge reassignment was FILED on 11/20/2020 4:24:18 PM

Notice Date:     11/20/2020 4:24:18 PM

Original Judge:  David Hammer
New Judge:       Debra McLaughlin

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org

 West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:**   Jakob Toman

,

# NOTICE OF FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

This notice of judge reassignment was FILED on 11/20/2020 4:24:18 PM

Notice Date:      11/20/2020 4:24:18 PM

Original Judge:  David Hammer
New Judge:       Debra McLaughlin

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org



West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:**   CTWWM, Inc.

,

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

Scott Albright v. Jakob Toman

CC-19-2020-C-144

This notice of judge reassignment was FILED on 11/20/2020 4:24:18 PM

Notice Date:      11/20/2020 4:24:18 PM

Original Judge:   David Hammer

New Judge:        Debra McLaughlin

Laura Storm

CLERK OF THE CIRCUIT

Jefferson

119 N George Street

CHARLES TOWN, WV 25414

(304) 728-3231

circuitclerk@jeffersoncountywv.org

# COVER SHEET

E-FILED | 12/4/2020 3:55 PM
CC-19-2020-C-144
Jefferson County Circuit Clerk
Laura Storm

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF JEFFERSON COUNTY WEST VIRGINIA

**Scott Albright v. Jakob Toman**

**First Plaintiff:**  ☐ Business  ☑ Individual   **First Defendant:**  ☐ Business  ☑ Individual
☐ Government  ☐ Other                              ☐ Government  ☐ Other

**Judge:**  Debra McLaughlin

## COMPLAINT INFORMATION

**Case Type:** Civil                    **Complaint Type:** Other

**Origin:**  ☑ Initial Filing  ☐ Appeal from Municipal Court  ☐ Appeal from Magistrate Court

**Jury Trial Requested:**  ☐ Yes  ☑ No    **Case will be ready for trial by:** _____

**Mediation Requested:**  ☐ Yes  ☑ No

**Substantial Hardship Requested:**  ☐ Yes  ☑ No

---

☐ Do you or any of your clients or witnesses in this case require special accommodations due to a disability?

☐ Wheelchair accessible hearing room and other facilities

☐ Interpreter or other auxiliary aid for the hearing impaired

☐ Reader or other auxiliary aid for the visually impaired

☐ Spokesperson or other auxiliary aid for the speech impaired

☐ Other: _____

☐ I am proceeding without an attorney

☑ I have an attorney:   Stephen Skinner, PO Box 487, Charles Town, WV 25414

## SERVED PARTIES

**Name:**   Jakob Toman

**Address:**

**Days to Answer:** N/A          **Type of Service:** No Service

E-FILED | 12/4/2020 3:55 PM
CC-19-2020-C-144
Jefferson County Circuit Clerk
Laura Storm

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

**SCOTT R. ALBRIGHT, as Executor**
**of the Estate of DEAN THOMAS ALBRIGHT,**

> **Plaintiff,**

**vs.**                                          **CIVIL ACTION NO. 20-C-144**
                                                 **JUDGE McLAUGHLIN**

**JAKOB TOMAN and CTWWM, Inc.,**

> **Defendants.**

### FIRST AMENDED COMPLAINT

Plaintiff Scott R. Albright, as Executor of the Estate of Dean Thomas Albright, by his attorney, Stephen G. Skinner and Skinner Law Firm, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.    The Plaintiff is a resident of Berkeley County, West Virginia, and is the Administrator of the Estate of his father, Dean Thomas Albright, who was a resident of Berkeley County, West Virginia, at the time of his death.

2.    Defendant, Jakob Toman, is a resident of Virginia and can be served with a copy of the Complaint and Summons at CTWWM.

3.    The Defendant CTWWM, Inc. ("CTWWM") is a Virginia corporation who at all relevant times was doing business in West Virginia.

4.    At all relevant times, Toman was an employee and agent of CTWWM.

5.    This court has jurisdiction pursuant to W. Va. Code W. Va. Code § 51-2-2 because the amount in controversy is in excess of $7,500 and because most if not all of the acts that the form the basis for the claims occurred in West Virginia.

1

6.     Venue is proper in Jefferson County pursuant to W. Va. Code §56-1-1 because the cause of action arose in Jefferson County.

**FACTS**

7.     On January 25, 2019, Defendant Toman was driving a truck owned by Defendant CTWWM, Inc. traveling eastbound on Route 9 on his way to make a delivery for CTWWM.

8.     Toman was in the right lane, and a witness observed him driving erratically.

9.     Without warning, Toman swerved from his lane of travel and crossed into the left lane.

10.     Dean Albright was driving in the left lane and Toman nearly crashed into Albright.

11.     Toman's sudden movement into the lane caused Dean Albright to attempt to avoid the truck. That caused him to lose control of his car sending him into the median and over the edge of a 30 foot high overpass where his injuries eventually led to his death.



2

12.    No action of Dean Albright contributed to cause the wreck.

13.    No omission of Dean Albright contributed to cause the wreck.

14.    Toman's lack of attention to his driving left him unaware that he had forced Dean Albright's car off the road and over the side of an overpass bridge.

15.    Even though Toman's erratic driving caused Dean Albright to crash, Toman did not stop driving.

16.    Instead, Toman continued to drive to his destination, the Potomac Crossing shopping center.

17.    Another driver who witnessed what happened followed Toman and made a note of the truck's license plate.

18.    Meanwhile, another citizen passing by pulled Dean Albright from his car because he thought it was going to catch on fire.

19.    Dean Albright sustained severe injuries in the catastrophic crash and was transported by ambulance to the emergency department of Berkeley Medical Center.

20.    Because of the severity of his injuries, Dean Albright was then flown by helicopter to Fairfax Inova Hospital in Virginia.

21.    Dean Albright died of his injuries at The Hospice of the Panhandle.

22.    Defendant Toman failed to exercise reasonable care, failed to maintain control of the vehicle, and was otherwise negligent, grossly negligent, careless, wanton, and reckless in his conduct.

23.    His conduct after the wreck is evidence of his state of mind and his lack of attention to his surroundings.

3

24.     Properly maintained delivery trucks are able to maintain their lane.

25.     Properly trained commercial drivers are able to stay in their lane of travel.

26.     Properly trained commercial drivers stop their vehicles when they have caused a wreck or accident.

27.     Defendant CTWWM negligently failed to ensure that Toman was properly trained prior to hiring him.

28.     Defendant CTWWM failed to train Toman in how to make non-negligent deliveries and make judgments about driving in conditions that could cause his truck to lose control.

29.     The wreck was solely caused by the negligence of the Defendants, individually and collectively, and the careless driving of Toman.

30.     As a further result of the tortious and reckless acts of the Defendant, the Estate of Dean Albright and his beneficiaries incurred damages including: sorrow, mental anguish, and solace; the services, protection, care and assistance provided by Dean Albright to his beneficiaries; expenses for the care, treatment and hospitalization of the decedent; and reasonable funeral expenses.

## COUNT 1
## NEGLIGENCE OF TOMAN

31.     All preceding statements of the complaint are incorporated herein and realleged as if expressly set forth herein.  Upon information and belief:

32.     At the time of the wreck, Defendant Toman failed to exercise due care by driving the truck carelessly and erratically, having faulty brakes and/or tires, driving in a

4

reckless manner, improperly following too close, disregarding the actual and potential hazards then existing, and failing to perform a proper inspection of the truck when he knew, or should have known, of problems with the brakes and tires.

33.     The truck driven by Defendant Toman was driven with the permission and at the direction of Defendant CTWWM.

34.     The CTWWM tractor driven by Defendant Toman was driven in the course and scope of his employment with the business of Defendant CTWWM.

35.     The CTWWM trailer hauled by Defendant Toman was operated in the course and scope of his employment with the business of Defendant CTWWM.

36.     At the time and place of this wreck, Defendant Toman owed a duty of care to Mr. Albright and the public on the roadways to operate his truck in a non-negligent manner.

37.     Toman was negligent under the circumstances then and there existing in that he:

      a.  failed to keep his vehicle under control;

      b.  failed to keep a proper look-out;

      c.  failed to timely apply his brakes, alter direction of travel, or take any other appropriate action when he, by the exercise of due and reasonable care, should have seen and or been aware of the vehicles in the lane beside him;

      d.  failed to operate his vehicle in a safe and prudent manner in view of the conditions which existed that day and at the time of the wreck;

5

    e.  failed to inspect his vehicle in a manner considerate of the safety and lives of the other persons lawfully on the road;

    f.  failed to operate his vehicle in a manner considerate of the safety and lives of the other persons lawfully on the road;

    g.  drove in a reckless manner;

    h.  failing to stop and render aid; and

    i.  such other actions or inactions that may be shown at trial and through expert testimony.

38.    It was foreseeable that Toman's negligence including his failure to maintain control of his truck and stay in his lane could lead to another vehicle running off the road.

39.    Toman's negligence proximately caused Dean Albright's wreck and resulting damages and injuries.

40.    At the time and place of this accident, the Defendant Toman was negligent in that he was violating one or more of the statutes of the State of West Virginia including but not limited to:

    a.  W. Va. Code § 17C-2-2. Required obedience to traffic laws;

    b.  W. Va. Code § 17C-5-3. Reckless driving;

    c.  W. Va. Code § 17C-7-9. Driving on roadways laned for traffic; and

    d.  W. Va. Code § 17C-8-8. Turning movements and required signals.

## COUNT TWO
## NEGLIGENCE OF TOMAN IN FAILING TO STOP AND RENDER AID

41.     All preceding statements of the complaint are incorporated herein and reavleged as if expressly set forth herein.

42.     Toman owed a duty to Dean Albright and the traveling public to immediately stop and render aid to Dean Albright.

43.     The failure to stop and render aid was a proximate cause of Dean Albright's injuries and ultimate death.

44.     At the time and place of this wreck, the Defendant Toman was negligent in that he was violating one or more of the statutes of the State of West Virginia including but not limited to:

45.     W. Va. Code §1C-4-3. Duty to give information and render aid and §17C-4-1. Crashes involving death or personal injuries

46.     Defendants' negligence, individually and collectively, proximately caused the injuries and death to Dean Albright and the damages alleged above.

## COUNT 3 – NEGLIGENCE OF CTWWM
## NEGLIGENT HIRING, TRAINING, ENTRUSTMENT, SUPERVISION, RETENTION AND MAINTENANCE

47.     All preceding statements of the complaint are incorporated herein and reavleged as if expressly set forth herein.  Upon information and belief:

48.     Defendant CTWWM owns the truck operated by Toman.

49.     At the time of the wreck, Defendant Scott Toman was an employee and/or agent of defendant CTWWM.

7

50.     At all times relevant hereto, Scott Toman was a truck driver for CTWWM and was acting within the scope and course of its business.

51.     At all times relevant hereto, Defendant CTWWM was acting by and through its employees/agents and was responsible for the acts of those employees and agents pursuant to *respondeat superior*, agency, apparent agency, negligent entrustment, negligent hiring of an independent contractor, or similar theory of law.

52.     At all times relevant hereto, Defendants CTWWM and Toman were acting in a joint enterprise:

      a.     They agreed to move goods for profit;

      b.     They coordinated and combined resources and skills in order to achieve their objective of moving items in order to earn money.

53.     Regardless of the employment relationship, Defendant CTWWM is the registered owner of the truck involved in this wreck and is therefore responsible for the acts of the driver of that vehicle.

54.     At all times relevant to this cause of action, Defendants CTWWM and Toman were subject to and required to obey the minimum safety standards established by the Federal and State law.

55.     The operation of a commercial delivery company and the hiring, qualifying, training, and supervising of its drivers requires care and skill to be done safely or it is foreseeable that serious harm and injury will occur to the traveling public.

56.     CTWWM's acts, and failures to act, as described below and above resulted in foreseeable harm to Dean Albright.

8

57.     Defendant CTWWM is required to qualify and hire safe truck drivers and to teach and train those drivers so that they are able to understand and obey the rules and regulations required of commercial drivers and to carry out their duties and obligations.

58.     Defendant CTWWM breached these duties and was negligent, and grossly negligent, in:

     a.    hiring and/or contracting with Defendant Toman to drive the truck at issue;

     b.    training of Defendant Toman on the rules and regulations required to safely operate the vehicle;

     c.    failing to supervise Defendant Toman while driving the truck;

     d.    failing to train Defendant Toman to properly drive the truck;

     e.    failing to train Defendant Toman to properly inspect the truck;

     f.    failing to train Defendant Toman to properly maintain the truck;

     g.    entrusting Defendant Toman with the truck;

     h.    retaining Defendant Toman to drive the truck;

     i.    failing to conduct proper and required checks on the background of their employee, agent Defendant Toman; and

     j.    failure to exercise ordinary care to determine their employees' agents' and/or contractors' fitness for the task of driving a vehicle interstate.

59.     Defendant CTWWM had a duty to promulgate and enforce rules and regulations to ensure its drivers and vehicles were reasonably safe, and negligently failed to do so.

9

60.    Defendant CTWWM, through its agents and employees, knew, had reason to know, or should have known by exercising reasonable care, about the risks set forth in this complaint and that by simply exercising reasonable care these risks would be reduced or eliminated. These risks include, but are not limited to:

a.  the risks associated with unsafe drivers;

b.  the risks associated with failing to train drivers to obey the rules and regulations required to safely operate trucks;

c.  the risks associated with failing to train drivers to follow minimum driving standards for commercial drivers;

d.  the risks associated with failing to train drivers to follow minimum inspection standards for commercial drivers;

e.  the risks associated with failing to train drivers to follow minimum maintenance standards for commercial drivers;

f.  the risks associated with failing to have adequate risk management policies and procedures in place;

g.  failing to have policies and procedures in place to identify undertrained and unqualified drivers;

h.  failure to appropriately implement and enforce risk management policies and procedures to monitor and assess Defendant Toman once he was hired;

i.  failing to implement and follow a written safety plan;

10

     j.  failing to protect the members of the public, such as the Plaintiff, from the risks described above;

     k.  failing to use the composite knowledge reasonably available to CTWWM to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk; and

     l.  failing to appropriately implement and enforce risk management policies and procedures to identify the risks described above.

61.    CTWWM was negligent in the maintenance of the truck and in the hiring, qualifying, supervising, training, and retention of Defendant Toman and is responsible for negligent entrustment of their truck to his care, and these acts of negligence, individually and combined and concurring with the acts of negligence of the other Defendants, proximately resulted in the damages to the Plaintiffs.

62.    The negligence of Defendant CTWWM was a proximate cause of the injuries and subsequent death of Dean Albright and the damages alleged above.

WHEREFORE, Plaintiff, Scott R. Albright, as Administrator of the Estate of Dean Thomas Albright, demands judgment against Defendant Jakob Toman and CTWWM, in past and future compensatory and punitive damages according to proof, plus costs, pre-judgment and post-judgment interest.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

SCOTT R. ALBRIGHT, as
Executor of the Estate of
**DEAN THOMAS ALBRIGHT**
BY COUNSEL

/s/ Stephen G. Skinner
Stephen G. Skinner (W.Va. Bar No. 6725)
SKINNER LAW FIRM
115 E. Washington St.
Charles Town, WV 25414
304-725-7029
sskinner@skinnerfirm.com

12

 West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:** Stephen Skinner
sskinner@skinnerfirm.com

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

The following amended complaint was FILED on 12/4/2020 3:55:08 PM

Notice Date:      12/4/2020 3:55:08 PM

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org



West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:**  CTWWM, Inc.

,

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

Scott Albright v. Jakob Toman

CC-19-2020-C-144

The following amended complaint was FILED on 12/4/2020 3:55:08 PM

Notice Date:      12/4/2020 3:55:08 PM

Laura Storm

CLERK OF THE CIRCUIT

Jefferson

119 N George Street

CHARLES TOWN, WV 25414

(304) 728-3231

circuitclerk@jeffersoncountywv.org

E-FILED | 12/4/2020 3:58 PM
CC-19-2020-C-144
Jefferson County Circuit Clerk
Laura Storm

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

SCOTT R. ALBRIGHT, as Executor
of the Estate of DEAN THOMAS ALBRIGHT,

       Plaintiff,

vs.                              CIVIL ACTION NO.  20-C-144

JAKOB TOMAN and CTWWM, Inc.,

       Defendants.

## ACCEPTANCE OF PROCESS

The undersigned hereby declares that she is the attorney for Jakob Toman and

CTWWM, Inc. in the above styled civil action and that she hereby accepts service of a

copy of the Complaint in this case as of the 25ᵗʰ day of November , 2020, on behalf of

Jakob Toman and CTWWM, Inc.

                                Tracey Rohrbaugh
                                LAY CASTO & CHANEY, PLLC
                                400 Foxcroft Ave., Suite 100
                                Martinsburg, WV 25401
                                trohrbaugh@kaycasto.com



West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:** Stephen Skinner
sskinner@skinnerfirm.com

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

The following supporting documents was FILED on 12/4/2020 3:58:08 PM

Notice Date:      12/4/2020 3:58:08 PM

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org



West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:**   Jakob Toman

,

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

The following supporting documents was FILED on 12/4/2020 3:58:08 PM

Notice Date:      12/4/2020 3:58:08 PM

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org

 West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:** CTWWM, Inc.

,

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

The following supporting documents was FILED on 12/4/2020 3:58:08 PM

Notice Date:      12/4/2020 3:58:08 PM

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org

E-FILED | 12/18/2020 11:24 AM
CC-19-2020-C-144
Jefferson County Circuit Clerk
Laura Storm

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

**SCOTT R. ALBRIGHT, as Executor,**
**of the Estate of DEAN THOMAS ALBRIGHT**

> **Plaintiff,**

**v.**                                                 **Civil Action No. 20-C-144**
                                                       **Judge David Hammer**

**JAKOB TOMAN and CTWWM, INC.,**

> **Defendants.**

### NOTICE OF APPEARANCE

PLEASE TAKE NOTICE that Tracey A. Rohrbaugh of Kay Casto & Chaney PLLC, hereby enters her appearance as counsel of record on behalf of Defendants, Jakob Toman and CTWWM, Inc. Therefore, all parties and counsel of record should send copies of all future correspondence, documents, pleadings, and discovery to the undersigned counsel at 400 Foxcroft Avenue, Suite 100, Martinsburg, West Virginia, 25401, from this date forward.

> JAKOB TOMAN and CTWWM, INC.,
> Defendants, by Counsel

*/s/ Tracey A. Rohrbaugh*
Tracey A. Rohrbaugh (WVSB #6662)
Kay Casto & Chaney PLLC
400 Foxcroft Avenue, Suite 100
Martinsburg, West Virginia 25401
P: (304) 901-7500
F: (304) 901-4911
*trohrbaugh@kaycasto.com*

{01545377.DOCX }

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

SCOTT R. ALBRIGHT, as Executor,
of the Estate of DEAN THOMAS ALBRIGHT

        Plaintiff,

v.                                Civil Action No. 20-C-144
                                Judge David Hammer

JAKOB TOMAN and CTWWM, INC.,

        Defendants.

## CERTIFICATE OF SERVICE

    I, Tracey A. Rohrbaugh, counsel for Defendants, Jakob Toman and CTWWM, Inc., hereby

certify that I electronically filed the foregoing ***Notice of Appearance*** with the Clerk of the Court

by using the court's electronic filing system, which will send notification of such filing to the

below-named counsel:

        Stephen G. Skinner, Esq.
        Skinner Law Firm
        115 E. Washington Street
        Charles Town, WV 25414
        *Counsel for Plaintiff*

    Dated this 18th day of December, 2020.

                             */s/ Tracey A. Rohrbaugh*
                             Tracey A. Rohrbaugh

{01545377.DOCX }

 West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:** Tracey Rohrbaugh
trohrbaugh@kaycasto.com

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

Scott Albright v. Jakob Toman

CC-19-2020-C-144

The following notice of appearance was FILED on 12/18/2020 11:24:17 AM

Notice Date:      12/18/2020 11:24:17 AM

Laura Storm

CLERK OF THE CIRCUIT

Jefferson

119 N George Street

CHARLES TOWN, WV 25414

(304) 728-3231

circuitclerk@jeffersoncountywv.org



West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:** Stephen G. Skinner
sskinner@skinnerfirm.com

# NOTICE OF FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

The following notice of appearance was FILED on 12/18/2020 11:24:17 AM

Notice Date:     12/18/2020 11:24:17 AM

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org



E-FILED | 12/18/2020 11:25 AM
CC-19-2020-C-144
Jefferson County Circuit Clerk
Laura Storm

400 Foxcroft Av
Telep

*www.kaycasto.com*

*Tracey A. Rohrbaugh*
*Direct Dial: (304) 901-7502*
*trohrbaugh@kaycasto.com*

December 18, 2020

Laura E. Storm, Clerk
Jefferson County Circuit Court
P.O. Box 1234
Charles Town, WV 25414

Re:   *Scott R. Albright, as Executor of the Estate of Dean Thomas Albright v. Jakob*
      *Toman and CTWWM, Inc.*
      Circuit Court of Jefferson County, West Virginia
      Civil Case No. 20-C-144

Dear Ms. Storm:

I write to request a certified copy of the case file in the above-referenced matter.  Please include a statement for any reasonable charges incurred.

I would like to pick up the documents today if possible.  Please contact me at (304) 901-7500 when the records are available for retrieval by my assistant.

Very truly yours,

*/s/ Tracey A. Rohrbaugh*

Tracey A. Rohrbaugh

TAR/sks



West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:**   Tracey Rohrbaugh
trohrbaugh@kaycasto.com

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

The following letter to clerk was FILED on 12/18/2020 11:25:24 AM

Notice Date:    12/18/2020 11:25:24 AM

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org

 West Virginia E-Filing Notice

CC-19-2020-C-144

Judge: Debra McLaughlin

**To:** Stephen G. Skinner
sskinner@skinnerfirm.com

# NOTICE OF FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Scott Albright v. Jakob Toman
CC-19-2020-C-144

The following letter to clerk was FILED on 12/18/2020 11:25:24 AM

Notice Date:   12/18/2020 11:25:24 AM

Laura Storm
CLERK OF THE CIRCUIT
Jefferson
119 N George Street
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org